FILED
Clerk
District Court
JUN 29 2023
for the Northern Mariana Islands
By_____JP_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. 1:22-cr-00002 |
| Plaintiff, | ) |
| | ) MEMORANDUM DECISION ON |
| v. | ) DEFENDANT'S OMNIBUS MOTIONS |
| | ) IN LIMINE; and |
| BONIFACIO VITUG SAGANA (a/k/a | ) |
| "BONI"), | ) DECISION AND ORDER DENYING |
| | ) DEFENDANT'S MOTION IN LIMINE |
| Defendant. | ) TO PRECLUDE OTHER ACTS |
| | ) EVIDENCE |
| | ) |
| | ) (UNDER SEAL)[1] |

With a jury trial set to begin on July 7, 2023, the Government and Defendant Bonifacio Vitug Sagana (a/k/a "Boni") filed numerous motions in limine (ECF Nos. 86, 90, 91). The motions were heard on June 22, 2023. (Mins., ECF No. 104.) The Government withdrew its motion in limine (ECF No. 91), and the Court ruled on Defendant's omnibus motions in limine (ECF No. 90) as well as granted the parties leave to supplement their filings for Defendant's motion in limine to exclude evidence of other crimes, wrongs, or acts under Federal Rule of Evidence 404(b) (ECF No. 86). (*See id.*) After receipt and review of the supplemental submissions, the applicable law, and the parties' oral arguments, the Court now DENIES Defendant's motion in limine to exclude other acts evidence. The Court issues this decision detailing its rationale for its rulings on the motions.

## I.     BACKGROUND

Sagana is charged with the offense of conspiracy to unlawfully produce an identification document. (Indictment, ECF No. 1.) Specifically, the Government alleges that on February 16,

---

[1] This decision shall automatically be unsealed immediately upon the empanelment of a jury.

2017, Sagana knowingly and intentionally conspired with Bernardita Antoni Zata to unlawfully produce a Commonwealth of the Northern Mariana Islands ("CNMI") driver's license. (*Id.*)

The Government will call Zata as a witness against Sagana at his trial and expects her to testify consistent with her statement to law enforcement. (ECF No. 105 at 2.) In 2017, Zata, a citizen of the Philippines, did not have lawful immigration status while residing in the CNMI but wanted to renew her CNMI driver's license. (Zata Statement 1, ECF No. 91-1.) She had seen Defendant before and knew that he had a reputation for helping Filipinos without lawful immigration status obtain driver's licenses. (*Id.*) Seeing Sagana at a store, Zata asked him if he could help her renew her license despite her lack of lawful immigration status; he agreed and they made plans to renew her license. (*Id.*) On the day Zata renewed her license, she met Sagana and provided him $150-$200 and her old driver's license. (*Id.*) Although Zata signed her driver's license application, she did not fill in the information herself. (*Id.* at 2.) Sagana went to the Bureau of Motor Vehicles ("BMV") window to help Zata process the documents; Zata sat and waited to have her photo taken. (*Id.*) In a subsequent interview with law enforcement, Zata did not recognize an immigration departure form included in her application, but she was able to identify Sagana in a photo lineup. (*Id.*) Zata has separately entered a guilty plea to the same charged offense as against Sagana in a separate case and is awaiting sentencing. (*See* Plea Agreement, *United States v. Zata,* Case No. 1:21-cr-00011 (D. N. Mar. I. June 23, 2021), ECF No. 2; Order Continuing Sentencing, *United States v. Zata,* Case No. 1:21-cr-00011 (D. N. Mar. I. Mar. 13, 2023), ECF No. 43.)

The Court now turns to the various motions and addresses each in turn.

II.  **DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF OTHER CRIMES, WRONGS, OR ACTS UNDER FRE 404(b)**

On March 9, 2023, the Government gave notice to Sagana pursuant to Federal Rule of Evidence 404(b) of its intention to introduce in its case in chief at trial Sagana's prior bad acts. (ECF No. 86-1.) After receipt of the Government's notice, Sagana filed a motion in limine to

2

exclude such other-acts evidence. (Def. Mot. Limine, ECF No. 86.) The Government filed an opposition (US Opp'n, ECF No. 94) to which Sagana replied (Def. Reply, ECF No. 96). At the motion hearing, the Court heard arguments from the prosecutor articulating the evidence it intended to introduce at trial and how a particular piece of evidence will tie Sagana to his co-conspirator Zata as well as the 404(b) witness Mr. Diosdado Garcia. In support of its argument, the Government provided to the Court a copy of what purports to be Zata's Departure Record referred to as her I-94 card that was a part of the CNMI Department of Public Safety records. The Government could not readily provide a copy of Sagana's I-94 card and its Rule 404(b) witness Garcia's I-94 card at the hearing. For the reasons stated on the record, the Court withheld ruling on this motion and granted the parties leave to supplement their submissions. (Mins., ECF No. 104.) The Government subsequently provided a supplemental opposition (US Suppl. Opp'n, ECF No. 105) with several exhibits of I-94 forms (ECF Nos. 105-1—105-4) to which Sagana responded to (Def. Suppl. Reply, ECF No. 106).

### A. FACTS

The Government seeks to introduce the testimony of Garcia regarding his separate conspiracy with Sagana to unlawfully produce a CNMI driver's license for Garcia. (ECF No. 86-1; US Suppl. Opp'n 6 (withdrawing intent to introduce testimony of Nestor Villareal, Romeo Castro, and Margarito Villafuerte).)

In 2017, Garcia paid Sagana $250 to renew his CNMI driver's license despite his lack of a valid immigration status. (Garcia Statement 1, ECF No. 91-4.) The day before Garcia received his new driver's license, he provided Sagana his driver's license and passport. (*Id.*) Per Sagana's instructions, Garcia went to the BMV the next day – after waiting, Garcia was called to the window to sign his name, have his photo taken, and received his license. (*Id.*) In a subsequent interview

with law enforcement, Garcia did not recognize the I-94 form included in his application but was able to identify and name Sagana in a photo lineup. (*Id.* at 2.)

The Government submits that a U.S. Customs and Border Protection ("CBP") officer will testify at trial to the following facts pertaining to the immigration document at issue in this case. (US Suppl. Opp'n 3.) The officer is expected to explain that an I-94 form is a foreign citizen's immigration document that is stamped by a CBP officer upon entry into the United States that denotes "Parole in Place" ("PIP"). (*Id.*) The stamp contains: the PIP expiration date, the classification of the PIP granted (such as DA-PL110-129), the CBP officer's unique serial number, the date the PIP was approved upon entry, and the two-year later date of expiration. (*Id.*) The Government provided copies of a sample I-94 form CBP officers use to explain how to read an I-94 (ECF No. 105-1), Sagana's I-94 (ECF No. 105-2), Zata's I-94 (ECF No. 105-3), and Garcia's I-94 (ECF No. 105-4). A review of the I-94s of Sagana, Zata, and Garcia reveals that the three stamps on each I-94 contain the exact same information. (*See* ECF Nos. 105-2—105-4; *see also* US Suppl. Opp'n 4-5.)

### B. LEGAL STANDARD:

While "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character[,]" such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1)-(2). "Rule 404(b) is a rule of inclusion," not exclusion. *United States v. Alfonso*, 759 F.2d 728, 739 (9th Cir. 1985) (citation omitted). To introduce such evidence in a criminal case, the prosecutor must provide reasonable notice that "articulate[s] . . . the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose[.]" Fed. R. Evid. 404(b)(3). To determine the admissibility of Rule 404(b)

evidence, the government has the burden to prove: "(1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged." *United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012) (citations omitted). Once the government establishes those elements, "the court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403." *Id.* (citation omitted).[2] The court has discretion over admission of evidence of prior similar acts. *Alfonso*, 759 F.2d at 739 (citation omitted).

### C. DISCUSSION

Sagana is charged with conspiracy to unlawfully produce an identification document in violation of 18 U.S.C. §§ 1028(a)(1), (b)(l)(A)(ii), (c)(3)(A) & (f). (Indictment, ECF No. 1.) The elements for this crime are: 1) an agreement between two or more persons to commit a crime charged in the indictment; 2) "the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it[;]" and 3) "one of the members of the conspiracy performed at least one overt act . . . for the purpose of carrying out the conspiracy." *See* Ninth Cir. Model Crim. Jury Instr. No. 11.1.[3] The Government offers Garcia's testimony as evidence to establish Sagana had the opportunity, plan and preparation, and knowledge to conspire with Zata to unlawfully produce a CNMI driver's license. (US Suppl. Opp'n 5.)

//

---

[2] Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

[3] Sagana asserts that intent is not an element for the charged crime (Def. Reply 2, ECF No. 96), but he mistakenly only cites to the Ninth Circuit Model Criminal Jury Instruction 15.1 for fraud in connection with production of identification document and neglected to reference Jury Instruction No. 11.1 for conspiracy, which includes intent as an element. Sagana recognizes this point in his response to the Government's proposed jury instructions. (ECF No. 100 at 3 ("this is a specific intent crime").)

### i.    Whether the evidence tends to prove a material point

"To show relevance under the first prong, 'the government must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence.'" *United States v. Ramos-Atondo*, 732 F.3d 1113, 1123 (9th Cir. 2013) (citation omitted). "Where the defendant's knowledge is contested, [the Ninth Circuit has] 'emphasized that the government must prove a logical connection between the knowledge gained as a result of the commission of the prior act and the knowledge at issue in the charged act.'" *Id.* (citation omitted).

Here, the prosecution initially failed to "articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." In its opposition, the only clarification the Government provided was that "the testimony of [Garcia] describing the same circumstances as Ms. Zata will enlighten the jury that there is no mistake or accident – because Defendant had motive, intent, took preparations, planned, and had knowledge necessary to facilitate fraud on behalf of Ms. Zata." (US Opp'n 4.) This is a conclusory statement and does not meet the standard of precise articulation.

However, the Government supplemented its opposition and clarified that it seeks to admit Garcia's testimony to demonstrate "opportunity, plan and preparation, and knowledge, to include a fraudulent I-94 with Ms. Zata's driver's license application." (US Suppl. Opp'n 5.) Specifically, the Government asserts that Garcia's testimony demonstrates that Sagana had the opportunity to assist Zata as Sagana "had a standing relationship with staff at the BMV that enabled Defendant to submit driver's license applications, completed by Defendant on behalf of foreign citizens, to the BMV." (*Id.* at 5-6.) Further, Sagana's plan and preparation are supported by "[t]he identical match of the CBP stamps on the I-94 copies between Defendant, Ms. Zata, and Mr. Garcia, is indicative that Defendant used his own I-94 stamp as a template for Ms. Zata's I-94." (*Id.* at 6.) Finally, "the identical matches of the I-94s are indicative that Defendant had the knowledge to

6

facilitate fraud necessary to unlawfully produce a driver's license for Ms. Zata." (*Id.*) Sagana argues the Government still "fails to illuminate how the allegedly fraudulent I-94s were produced and how they got into the BMV files." (Def. Suppl. Reply 1.) Additionally, he contends that "Garcia's testimony would not show [Sagana] had the capacity to doctor an I-94" and get Zata's I-94 into her driver's license file. (*Id.*)

Both Garcia and Zata claimed they never saw their respective I-94s that were made a part of their driver's license application file. (Garcia Statement 2; *see* Zata Statement 2.) To their knowledge, it was Sagana who submitted all the documents to the BMV for their driver's license renewal. (Zata Statement 2; *see* Garcia Statement 1.) The fact that Sagana tendered all the papers on their behalf, and that both Garcia and Zata's I-94s have the same exact CBP serial stamp information as Sagana's, provide sufficient bases to allow the jury to use circumstantial evidence to conclude that either Sagana himself or someone at his direction created their I-94s and made them a part of their respective driver's license applications submitted by Sagana. Contrary to defense's assertion, the Government need not demonstrate that Sagana himself created the I-94s. It is enough that the Government demonstrates Sagana was involved in the creation of the fake I-94s, such as providing his own I-94 to create a new I-94. Based on all these proffered facts, the Court concludes that the prosecution has sufficiently articulated the evidential hypothesis that may be derived from Garcia's testimony.

Ultimately, the Court finds that Garcia's testimony tends to prove a material point – specifically, that Sagana had the opportunity to engage in the charged offense of conspiracy to unlawfully produce a driver's license. The Ninth Circuit has equated the term opportunity to the defendant's *capacity* to commit the charged offense. *United States v. Green*, 648 F.2d 587, 592 (9th Cir. 1981) (per curiam). In *Green*, the defendants were charged and convicted of an elaborate conspiracy to frame a drug manufacturing company of producing LSD. *Id.* at 590-92. Effectuating

the charged conspiracies "required a combination of talents and associations[,]" which included connections with someone in the illegal drug business, to "have had the capacity, i.e., an opportunity, to commit the crimes charged." *Id.* at 592.[4] With this observation, the Ninth Circuit found that admission of a prior bad act that demonstrated the defendants' connections "was highly probative of opportunity, i.e., capacity, knowledge and even motive" and noted that "[i]t is unnecessary to specify the exception within which a particular line of inquiry or piece of evidence is admissible" since "[t]he exceptions of knowledge, plan, motive and opportunity are all closely related." *Id.* at 592-93.

In this case, effectuating the conspiracy of unlawfully providing Zata a driver's license required a relationship with the BMV for the BMV to accept a fraudulent I-94 and issue someone without lawful status a driver's license. Garcia's testimony reflects that Sagana had such a relationship with the BMV. Although Sagana did not accompany Garcia to the BMV, Garcia was able to obtain his renewed driver's license even though he neither completed his driver's license application, nor provided the application to the BMV. (*See* Garcia Statement 1.) Rather, he simply provided Sagana his passport and old driver's license the day before, went to the BMV the next day, waited until his name was called, went to the window to sign his name, had his photo taken, and received his driver's license. (*Id.*) In total, this evidence indicates that Sagana has such a relationship with the BMV such that he can submit an application package with a fake I-94 to cause BMV to produce a driver's license for a Filipino citizen without lawful immigration status who did not even complete or provide the application himself. As discussed earlier, the fake I-94 has a unique feature that ties it to Sagana's own legitimate I-94. As such, Garcia's testimony tends

---

[4] In another case illustration, the Ninth Circuit observed that "evidence that a defendant charged with bribery of public officials was acquainted with a notoriously corrupt state official was relevant to show that he had the kind of political connections to accomplish the charged acts of bribery." *Green*, 648 F.2d at 592 (citing *United States v. McPartlin*, 595 F.2d 1321, 1343 (7th Cir. 1979)).

to prove that Sagana had the capacity to enter a conspiracy to unlawfully produce a CNMI driver's license for Zata.

### ii. Whether the other act is not too remote in time

The Ninth Circuit "has not identified a particular number of years after which past conduct becomes too remote" because "[d]epending upon the theory of admissibility and the similarity of the acts . . . some remote acts may be extremely probative and relevant." *United States v. Johnson*, 132 F.3d 1279, 1283 (9th Cir. 1997) (citation omitted). In *Johnson*, prior acts of the sexual contact with teens that the defendant had engaged in thirteen years prior were "sufficiently similar to the charged conduct [of transporting a minor with intent to engage in criminal sexual activity] to render it probative despite the passage of time" of thirteen years. *Id.* at 1282-83.

The instant conspiracy and the production of Garcia's driver's both occurred in 2017.[5] The other act also involved the same scheme as the instant scheme – unlawfully producing a CNMI driver's license with an I-94 based off of Sagana's own I-94. Therefore, the testimony regarding the production of Garcia's driver's license is sufficiently similar to the charged conduct and not too remote in time.

### iii. Whether the evidence is sufficient to support a finding that defendant committed the other act

Evidence is sufficient to support a finding that the defendant committed the other act when the jury could "reasonably . . . conclude that the act[s] occurred and that the defendant was the actor." *United States v. Hinton*, 31 F.3d 817, 823 (9th Cir. 1994) (citations omitted); *see, e.g.*, *Huddleston v. United States*, 485 U.S. 681, 685 (1988). This reliability threshold is not a high one,

---

[5] Garcia's driver's license was produced in December 2017, (*see* US Suppl. Opp'n 4), after this instant conspiracy with Zata. Nevertheless, it is immaterial if the other act evidence "occurred before or after the offenses charged in the indictment." *U.S.A. v. Avery*, No. CR 11-00405 MMM, 2011 WL 13136810, at *11 (C.D. Cal. Dec. 15, 2011) (first citing *United States v. Delgado*, 56 F.3d 1357, 1365 (11th Cir. 1995); then citing *United States v. Latney*, 108 F.3d 1446, 1449 (D.C. Cir. 1997); and then citing *United States v. Olivo*, 80 F.3d 1466, 1469 (10th Cir. 1996)).

and the testimony of a single witness can be sufficient. *Hinton*, 31 F.3d at 823 (citations omitted) (finding sufficiency of evidence based on just the victim's testimony); *e.g., United States v. Bassinger*, 60 F.3d 1400, 1408 (9th Cir. 1995) (finding sufficiency of evidence based on testimony from searching and arresting officer). Although the lack of the defendant's arrest or prosecution from a prior operation does not automatically preclude admissibility of the evidence, it does raise questions of probative value. *Alfonso*, 759 F.2d at 739 (citations omitted).

Here, Garcia signed a statement under penalty of perjury detailing his process of unlawfully obtaining a driver's license with Sagana's help. Garcia had minimal interactions with the BMV as Garcia simply arrived at the BMV and waited until his name was called – he then went to the window to sign his name and have his photo taken. (Garcia Statement 1.) Further, Garcia identified Sagana in a photo lineup and was able to name him. (*Id.* at 2.) Finally, Garcia has plead guilty to the conspiracy with Sagana. (J. in Criminal Case, *United States v. Garcia*, Case No. 1:21-cr-00013 (D. N. Mar. I. May 13, 2022), ECF No. 34.) Thus, the jury could reasonably conclude that Sagana was the individual that helped Garcia, who lacked lawful immigration status, unlawfully produce a CNMI driver's license.

### iv. Whether the act is similar to the offense charged

Sagana's charged conspiracy with Zata to unlawfully produce a CNMI driver's license is very similar to the other act evidence that the Government seeks to introduce through Garcia. Zata and Garcia are citizens of the Philippines who lack lawful immigration status and paid Sagana money to help them obtain a CNMI driver's license. At the BMV, they merely waited and had their picture taken – then they were issued a driver's license. Contrary to Sagana's assertion, the other act and charged offense do not need to be identical; they just need to be sufficiently similar. *Johnson*, 132 F.3d at 1283; *see, e.g., United States v. Garcia-Orozco*, 997 F.2d 1302, 1304 (9th Cir. 1993) (upholding "introduction of evidence that the defendant, who was charged with

importing cocaine in the roof panel of a car, had also transported marijuana across the border in the door panel of a car" as the marijuana importation rebutted defendant' assertion that he was duped "because he repeated a similar, although not identical, action on a subsequent occasion." (citation omitted)). Therefore, the Court concludes that the alleged schemes between Garcia and Sagana, and Zata and Sagana, are sufficiently similar.

### v. Rule 403 Balancing

Contrary to Sagana's arguments, the Government seeks to introduce the other act evidence not for propensity purposes but to demonstrate Sagana's knowledge and opportunity for the conspiracy to unlawfully produce a driver's license for Zata. The probative value of introducing this evidence of one single other conspiracy to the jury substantially outweighs any undue prejudice to Sagana, especially in light of the concurrent jury instructions the Court will provide. *See Bassinger*, 60 F.3d at 1408 (finding that the limiting jury instruction that the district court gave "reduce[d] the danger of unfair prejudice" (citation omitted)). Therefore, the Court DENIES Sagana's motion in limine to exclude other acts evidence.

### III. GOVERNMENT'S MOTION IN LIMINE TO ADMIT STATEMENTS

The Government filed a motion in limine seeking to admit the prior written statements of three other individuals (Villareal, Castro, and Villafuerte) who supposedly engaged in similar conspiracies with Sagana to unlawfully obtain a CNMI driver's license pursuant to Federal Rule of Evidence 804(b)(3). (US Mot. Limine, ECF No. 91.) Sagana filed an opposition rebutting the Government's arguments and raising the issue of the Confrontation Clause (Def. Opp'n, ECF No. 93). The Government did not file a reply. At the motion hearing, the Government conceded that Sagana's opposition was well taken, and withdrew its motion in light of binding Supreme Court precedent of *Crawford v. Washington*, 541 U.S. 36 (2004). (*See* Mins., ECF No. 104.)

///

### IV. DEFENDANT'S OMNIBUS MOTION IN LIMINE

Sagana filed omnibus motions in limine regarding three different requests, two of which were unopposed. (Def. Omnibus Mot. Limine, ECF No. 90.) At the motion hearing, the Court granted in part, and denied in part Sagana's omnibus motions in limine (Mins., ECF No. 104); the Court memorializes its rationale herein.

#### A. UNOPPOSED MOTIONS

First, Sagana requests "the Court issue an order (1) excluding evidence of Sagana's current immigration status and (2) directing the Government to make an offer of proof, outside the presence of the jury, before eliciting testimony or offering any other evidence of Sagana's immigration status at any other point in time." (Def. Omnibus Mot. Limine 2.) The Government stipulated that it will not present evidence of Sagana's immigration status but maintains that his status prior to and at the time of the alleged offense is relevant. (*Id.*) Because Sagana's current immigration status is irrelevant, the Court GRANTED this request.

Second, Sagana requested one hour for each party to voir dire the jury panel. (*Id.*) While the Court appreciates Sagana's arguments for counsel questioning the jurors and recognizes the concerns regarding the high publicity of this trial in this small community, one hour for each counsel to voir dire is excessive. Thus, the Court DENIED this request.

#### B. MOTION TO EXCLUDE EVIDENCE RELATING TO SAGANA'S RELOCATION TO WISCONSIN

Finally, Sagana requested the exclusion of evidence relating to his relocation to Wisconsin. The Government filed an opposition (US Opp'n Omnibus Mot. Limine, ECF No. 95) supported with exhibits (ECF Nos. 95-1—95-3), to which Sagana filed a reply (Def. Reply Omnibus Mot. Limine, ECF No. 97) supported with exhibits (ECF Nos. 97-1—97-2).

//

/

### i. Facts

In January 2021, Sagana received his "combo card" – employment authorization and advance parole from the U.S. Citizenship and Immigration Services. (Def. Reply Omnibus Mot. Limine 2; ECF No. 97-1 at 2.) Two months later, federal agents executed a search warrant at Sagana's home. (US Opp'n Omnibus Mot. Limine 2.) On the day of the search, Sagana admitted that he was aware he was under investigation regarding the unlawful production of driver's licenses. (*See id.* at 2-3.) On June 14, 2021, Sagana left Saipan, CNMI for Wisconsin. (ECF No. 97-2.) Around this same time frame of Sagana's departure, the Government was engaging in plea agreement negotiations with another proposed but subsequently withdrawn 404(b) witness, Villafuerte, (US Opp'n Omnibus Mot. Limine 2); Villafuerte did not sign his plea agreement until June 22, 2021 (ECF No. 95-2 at 10).

When federal law enforcement questioned Sagana's son and wife in August 2021 about Sagana's location, neither knew or disclosed that he was in Wisconsin. (*See* ECF No. 95-1 at 2-3.)

### ii. Legal Standard

"Evidence of flight is generally admissible as evidence of consciousness of guilt and of guilt itself." *United States v. Harris*, 792 F.2d 866, 869 (9th Cir. 1986) (citations omitted). "[F]light instructions are valid if the evidence supports 'a chain of unbroken inferences from the defendant's behavior to the defendant's guilt of the crime charged.'" *United States v. Dixon*, 201 F.3d 1223, 1232 (9th Cir. 2000) (quoting *United States v. Silverman*, 861 F.2d 571, 581 (9th Cir. 1988)). Four inferences must be justified to satisfy this requirement: "(1) from the *defendant's behavior* to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *Id.* (emphasis added) (citing *Silverman*, 861 F.2d at 581).

The first inference focuses on the defendant's own behavior, as opposed to others' conduct. *See United States v. Al-Sadawi*, 432 F.3d 419, 425 (2d Cir. 2005) ("[T]he government should not have been permitted to argue that [the defendant's] wife's conduct evidenced [the defendant's] consciousness of guilt.").

The third "inference from proof of an unfocused consciousness of guilt to consciousness of guilt concerning the crime charged has proven especially problematic" but factors to consider are "whether the defendant knew the police suspected him of a particular crime" and "whether the defendant fled immediately after the crime." *Silverman*, 861 F.3d at 581 (citations omitted). In *Silverman*, there was a two-month gap between the last criminal act committed in furtherance of the alleged conspiracy and the defendant concealing his identity. *Id.* at 582. The Ninth Circuit concluded that the flight instruction was improper based upon "[t]his two-month delay, coupled with the absence of any showing by the Government that [the defendant] was aware of the nature of the charges against him at the time he concealed his identity[.]" *Id.* (citations omitted). Nevertheless, "this immediacy requirement generally only becomes important in those cases where the defendant does not know, or his knowledge is doubtful, about the charges and accusations made against him." *United States v. Hernandez-Miranda*, 601 F.2d 1104, 1106 (9th Cir. 1979) (citation omitted).

### iii. Discussion

The Government seeks to introduce evidence of Sagana's travel to Wisconsin on June 13, 2021 as evidence of consciousness of guilt. (Def. Omnibus Mot. Limine 1.) The instant conspiracy that Sagana is charged with occurred four years prior in February 2017. However this large gap in time is greatly diminished because in March 2021, when a search warrant was executed on his home, Sagana admitted to knowing that he was under investigation for assisting undocumented Filipinos unlawfully obtain CNMI driver's licenses. Although it is unclear whether Sagana knew

14

when he left for Wisconsin that he was being accused of the commission of the specific crime charged – the 2017 conspiracy with Zata to unlawfully produce a CNMI driver's license for her – "a defendant should not be able to evade a guilt inference by committing a number of crimes and then selectively (and conveniently) choosing the crime he felt most guilty for during his flight." *United States v. Smith*, No. 2:11-cr-58-JAD-CWH, 2014 U.S. Dist. LEXIS 18351, at *17 (D. Nev. Feb. 12, 2014).

It appears that the Government seeks this inference of guilt based upon the actions of Sagana's wife and son. (*See* US Opp'n Omnibus Mot. Limine 3.) It is unclear whether Sagana lied to his family or his family lied on their own to law enforcement. Regardless, and more importantly, Sagana was forthcoming about his relocation to federal authorities. (*See* Def. Reply Omnibus Mot. Limine 3.) At the hearing, the Government conceded that after Sagana arrived in Wisconsin, he did not make efforts to hide from law enforcement as he did not relocate or change his identity. Additionally, at the hearing, the Court took judicial notice that this occurred in June 2021, during the midst of the COVID-19 pandemic that decimated the economy in the CNMI. Defense counsel apprised the Court that Sagana had obtained employment at a hotel in Wisconsin. Further rebutting an inference of guilt, Sagana relocated to another jurisdiction within the United States, as opposed to his home country, the Philippines, which is outside the reach of the U.S. government. Therefore, the Court found a flight instruction inappropriate and GRANTED Sagana's motion in limine.

V.     **CONCLUSION**

For the foregoing reasons, the Court DENIES Defendant's motion in limine to exclude Garcia's testimony as evidence of other crimes, wrongs, or acts under Rule 404(b) (ECF No. 86). Furthermore, Defendant's omnibus motions in limine are GRANTED in part, and DENIED in part (ECF No. 90).

//

IT IS SO ORDERED this 29th day of June, 2023.

_____
RAMONA V. MANGLONA
Chief Judge